# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC DAVIDSON,<br><br>                    Plaintiff,<br><br>          v.<br><br>CALIFORNIA DEPARTMENT OF<br>CORRECTIONS AND REHABILITATION,<br>et al.,<br><br>                    Defendants. | 1:12-cv-01665-BAM (PC)<br><br>SCREENING ORDER DISMISSING<br>COMPLAINT AND GRANTING LEAVE TO<br>AMEND<br>(ECF No. 1)<br><br>THIRTY-DAY DEADLINE |

## First Screening Order

### I.      Screening Requirement and Standard

Plaintiff Eric Davidson ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff's complaint, filed on October 11, 2012, is currently before the Court for screening.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not

required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged, Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); Moss, 572 F.3d at 969.

## II.  Plaintiff's Allegations

Plaintiff is currently housed at the California Institution for Men in Chino, California. The events in his complaint are alleged to have occurred at Wasco State Prison, Sierra Conservation Center and Richard J. Donovan Prison. Plaintiff names (1) Matthew Cate, Secretary of the California Department of Corrections and Rehabilitation ("CDCR"), (2) Felix Chavez, Warden of the Sierra Conservation Center, and (3) Does 1-20. Throughout his complaint, Plaintiff also refers to various individuals as defendants. For example, Plaintiff names Defendant Sgt. Bick, Defendant Rivera, J., J. Ortega, CCI Wells, Classification Staff Representative Barkley, Ingle, Pate, Silva, Pendergrass, Davis, Otto, Allen, Sanchez, Halliburton, Baldwin, Warden Daniel Paramo, Lt. K. Spence, Lt. F. Armenta and Correctional Officer Janauch.

Plaintiff allegations, which are somewhat disjointed and difficult to understand, are summarized as follows: On November 16, 2011, Plaintiff was transferred from the Los Angeles

County Jail to the Wasco State Prison Reception Center.  CDCR staff acknowledged receipt of Plaintiff's cash in the amount of $25.00 and completed a CDC Form 104.  However, Plaintiff was repeatedly denied access to his cash until February 15, 2012, which caused him hardship. Plaintiff submitted a lost property appeal regarding his missing cash, but his appeal was rejected on January 9, 2012.

Prior to the rejection of his appeal, on January 8, 2012, a Hispanic CDCR correctional officer asked Plaintiff if he was going to sue the county while processing a piece of Plaintiff's outgoing legal correspondence.  The officer attempted to determine what the legal correspondence pertained to despite Plaintiff's repeated advisement that it related to Plaintiff's criminal appeal.  The officer eventually processed the correspondence.  Plaintiff claims that the reference and question about suing the county indicated CDCR Wasco employees' knowledge of Plaintiff's litigation against the county.  Plaintiff claims a racial undertone and motivation behind the question by the CDCR officer.  Plaintiff alleges that CDCR employees targeted him in retaliation for exercising his right to judicial relief.

On January 24, 2012, after Plaintiff's use of the CDCR grievance process for his withheld funds, CDCR officials conducted an arbitrary classification to transfer Plaintiff to the Sierra Conservation Center ("SCC").  Plaintiff claims that he was falsely purported to be eligible for the camp and SCC lacked the computer vocation that Plaintiff had expressed an interest in as part of his rehabilitation.

Plaintiff received notice of his transfer on January 31, 2012, and was transferred to SCC on February 1, 2012.  Upon his arrival, Plaintiff submitted an administrative grievance regarding his transfer.  Plaintiff claimed that the transfer disregarded safety-based concerns such as Plaintiff's obvious medical ineligibility for camp, his mental health concerns, his specific request for a transfer to the California Institution for Men ("CIM"), and his expressed interest in participation in the Computer Vocations provided at CIM.  In seeking an administrative remedy, Plaintiff discovered that CDCR officials made false recommendations regarding his transfer and noted enemy activity.

1    In March 2012, SCC officials subjected Plaintiff to "undue and inhuman" conditions and
2    unlawfully inquired into his legal affairs.  Plaintiff claims that his dorm was searched three times
3    that month.  His legal documents were searched outside of his presence and his property was left
4    in disorder.  On March 7, 2012, the search concluded with Plaintiff's property mixed with the
5    property of two Hispanic inmates to incite a racial dispute and violence.  CDCR officials claimed
6    that a search on March 7, 2012, was for drugs.  Plaintiff's administrative appeal regarding the
7    March 7, 2012 search was rejected.  Plaintiff asserts that the searches constituted harassment and
8    retaliation and that the opening of his confidential correspondence violated his rights.

9    Plaintiff also alleges that "enemy activity" was arbitrarily entered into his CDCR records.
10   Plaintiff claims that his efforts to seek disclosure of the enemy activity were met with refusals by
11   CDCR officials.

12   Plaintiff alleges that CDCR officials at both WSP and SCC engaged in further acts in
13   violation of his rights by opening his confidential correspondence on March 7 and March 12,
14   2012.

15   Plaintiff further alleges that his efforts to seek inclusion in the Mental Health Services
16   Delivery System since his arrival SCC were met with violations of his right to inclusion.
17   Plaintiff claims that Sanchez, Allen and others made inaccurate and/or false entries in Plaintiff's
18   mental health records.  Plaintiff further claims that his efforts to seek inclusion through the
19   administrative remedy process resulted in retaliation by SCC officials arbitrarily classifying him
20   and placing him in an inappropriate mental health care treatment level.  When Plaintiff realized
21   the SCC mental health staff's propensity for making false or inaccurate statements in Plaintiff's
22   mental health records and the danger posed by undocumented verbal refusal to speak with mental
23   health staff, Plaintiff began insisting on written, documented refusals.

24   On July 18, 2012, SCC mental health staff, led by Dr. Otto, began to employ force by
25   requiring custodial officer Austen to threaten physical restraint when Plaintiff refused to walk
26   into an office occupied by Drs. Otto, Halliburton and Sanchez for EOP treatment.  Plaintiff
27   claims that he was in imminent danger of the use of physical force for exercising his right to
28   refuse treatment.

Plaintiff also contends that CDCR SCC officials denied Plaintiff's requests for transfer in deliberate indifference to the adverse effects of his continued housing at SCC on his mental and medical well-being. Plaintiff alleges that SCC's officials twice, on April 6, 2012 and May 8, 2012, endorsed Plaintiff for transfer without the intent to actually transfer Plaintiff.

Plaintiff alleges that SCC officials required Plaintiff to use stairs to access the law library in deliberate indifference to Plaintiff's pain, discomfort, and mental anguish. Plaintiff alleges that the use of stairs aggravated his medical condition.

Plaintiff asserts that based on the improper EOP program, Plaintiff was transferred, on July 25, 2012, to Richard J. Donovan prison ("RJD"). Upon arrival, Plaintiff was placed in administrative segregation in violation of his due process rights. While in Administrative Segregation, Plaintiff was denied basic human necessities, such as soap, toilet paper, and writing materials, as well as a shower for several days. On August 4, 2012, Plaintiff was provided with soap that was hazardous to his well-being and not given "Ivory" soap like other inmates.

Plaintiff also claims that his right of access to the courts has been restricted by the ineffective appeal process at RJD. The ineffective process was effectuated by the action of J. Rivera, the Health Care Appeals Coordinator. Plaintiff alleges that Defendant Rivera rejected Plaintiff's appeals alleging staff misconduct. Plaintiff also claims that his right of access to the courts has been violated at RJD by the lack of physical access to the law library. As a final matter, Plaintiff alleges that his right to refuse treatment has been violated at RJD.

Plaintiff appears to assert a number of causes action based on violations of the First, Fourth, Eighth and Fourteenth Amendments.

### III.   Deficiencies of Complaint

As discussed more fully below, Plaintiff's complaint fails to comply with Federal Rules of Civil Procedure 8 and 18 and shall be dismissed with leave to amend. To assist Plaintiff in amended his complaint, the Court provides the following pleading and legal standards that appear to apply to his claims.

///

///

### A.  Federal Rule of Civil Procedure 8

Pursuant to Federal Rule of Civil Procedure 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citation omitted).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. Id.; see also Twombly, 550 U.S. at 556–557; Moss, 572 F.3d at 969.

Plaintiff's complaint does not clearly set forth the factual allegations underlying his claims.  Many of his allegations are conclusory and fail to describe specific actions taken by the different defendants in violation of his constitutional rights.  If Plaintiff elects to amend his complaint, he must set forth factual allegations against each defendant sufficient to state a claim.

### B.  Federal Rule of Civil Procedure 18

Federal Rule of Civil Procedure 18 states that "[a] party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s] but also to ensure that prisoners pay the required filing fees--for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (citing 28 U.S.C. § 1915(g)).

Here, Plaintiff attempts to bring suit against multiple defendants for apparently different incidents at different times and at different prisons.  For example, Plaintiff complains about interference with his legal correspondence and retaliation at Wasco State Prison, while

simultaneously complaining about his transfer to SCC, retaliation at SCC and participation in the mental health system while at SCC. Plaintiff also complains about events at RJD.

Plaintiff may not pursue multiple unrelated claims against different defendants in a single action. Plaintiff may bring a claim against multiple defendants only if (1) the claim arises out of the same transaction or occurrence, or series of transactions and occurrences, and (2) there are commons questions of law or fact. Fed. R. Civ. P. 20(a)(2); Coughlin v. Rogers, 130 F.3d 1348, 1351 (9th Cir. 1997); Desert Empire Bank v. Insurance Co. of North America, 623 F.2d 1371, 1375 (9th Cir. 1980).

As noted, Plaintiff's complaint will be dismissed with leave to amend. In his amended complaint, Plaintiff shall choose which claims he wishes to pursue in this action. If Plaintiff's amended complaint sets forth unrelated claims, the Court will dismiss the claims it finds to be improperly joined.

### C. Linkage Requirement

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution ... shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. See Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); Rizzo v. Goode, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

In his complaint, Plaintiff fails to identify and clearly link several defendants to the causes of action. General references to "CDCR officials" are not sufficient. If Plaintiff chooses

to amend his complaint, he must link each named defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's rights.

### D. Supervisory Liability

To the extent Plaintiff seeks to hold Defendants Cate and Chavez liable based upon their supervisory positions, he may not do so. Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. Iqbal, 556 U.S. at 676–77; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205-06 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark County School Board of Trustees, 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997).

### E. Retaliation

Within the prison context, a viable claim of First Amendment retaliation consists of five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

A plaintiff suing for retaliation under section 1983 must allege that "he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline." Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994). The plaintiff does not need to show actual inhibited or suppressed speech, but that there was a chilling effect upon his speech. Rhodes, 408 F.3d at

569.  The burden is on the plaintiff to plead and prove the absence of any legitimate correctional

goals for the alleged conduct.  Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995).

### F.  Mail Claim

Prisoners have "a First Amendment right to send and receive mail." Witherow v. Paff, 52

F.3d 264, 265 (9th Cir. 1995). However, an isolated incident of mail interference or tampering

usually does not support a claim under section 1983 for the violation of a constitutional right.

See Davis v. Goord, 320 F.3d 346, 351 (2d. Cir.2003) (isolated incident of mail tampering

usually insufficient to state claim); Gardner v. Howard, 109 F.3d 427, 431 (8th Cir.1997)

(isolated incident of opening legal mail without evidence of improper motive or resulting

interference with access to courts or right to counsel does not support a claim); Smith v.

Maschner, 899 F.2d 940, 944 (10th Cir.1990) (isolated incident of opening one piece of legal

mail in error does not rise to level of constitutional violation); Saenz v. Chavez, 1:11-cv-01872-

SKO, 2013 WL 1832680, *5 (E.D. Cal. May 1, 2013).

### G.  Fourteenth Amendment - Due Process

Transfers

There is no substantive liberty interest in being housed in a particular prison and an

inmate has no right to incarceration in the prison of his choice.  Olim v. Wakinekona, 461 U.S.

238, 245, 103 S. Ct. 1741, 1745 (1983); White v. Lambert, 370 F.3d 1002, 1013 (9th Cir. 2004)

(overruled on other grounds by Hayward v. Marshall, 603 F.3d 546 (9th Cir. 2010).  Neither an

initial decision assigning the inmate to a particular prison nor a subsequent transfer to a different

prison implicates the Due Process Clause.  Olim, 461 U.S. 244-45, 103 S. Ct. at 1745; Meachum

v. Fano, 427 U.S. 215, 224, 96 S. Ct. 2532, 2538 (1976); see Moody v. Daggett, 429 U.S. 78, 88

n.9, 97 S. Ct. 274, 279 (1976); Montanye v. Haymes, 427 U.S. 236, 242, 96 S. Ct. 2543, 2547

(1976).

Deprivation of Property

While an authorized, intentional deprivation of property is actionable under the Due

Process Clause, neither a negligent nor intentional unauthorized deprivation of property by a

prison official is actionable if a meaningful postdeprivation remedy is available for the loss.

1   Hudson v. Palmer, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); Quick v. Jones,

2   754 F.2d 1521, 1524 (9th Cir.1984).  California law provides a post-deprivation remedy for any

3   property deprivations. Barnett v. Centoni, 31 F.3d 813, 816–17 (9th Cir.1994) (citing Cal. Gov't

4   Code §§ 810–895).

5      Access to Courts

6         Inmates have a fundamental constitutional right of access to the courts. Lewis v. Casey,

7   518 U.S. 343, 346, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). The right of access is merely the

8   right to bring to court a grievance the inmate wishes to present, and is limited to direct criminal

9   appeals, habeas petitions, and civil rights actions. Id. at 354. Claims for denial of access to the

10  courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained"

11  (forward-looking access claim) or from the loss of a meritorious suit that cannot now be tried

12  (backward-looking claim). Christopher v. Harbury, 536 U.S. 403, 412–15, 122 S.Ct. 2179, 2185–

13  87, 153 L.Ed.2d 413 (2002).  A prisoner alleging a violation of his right of access to the courts

14  must demonstrate that he has suffered "actual injury." Lewis, 518 U .S. at 349–50. The actual-

15  injury requirement mandates that an inmate "demonstrate that a nonfrivolous legal claim had

16  been frustrated or was being impeded." Id. at 353. The Supreme Court rejected the notion that

17  the state must enable a prisoner to "litigate effectively once in court." Id. at 354 (quoting and

18  disclaiming language contained in Bounds v. Smith, 430 U.S. 817, 825–26, 97 S.Ct. 1491, 52

19  L.Ed.2d 72 (1977)); see also Cornett v. Donovan, 51 F.3d 894, 898–900 (9th Cir.1995)

20  (determining that prisoners' right of access to the courts is limited to the pleading stage of a civil

21  rights action or petition for writ of habeas corpus).

22     Grievances

23        Plaintiff does not have a constitutionally protected right to have his appeals accepted or

24  processed. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir.2003); Mann v. Adams, 855 F.2d 639,

25  640 (9th Cir.1988). The prison grievance procedure does not confer any substantive rights upon

26  inmates and actions in reviewing appeals cannot serve as a basis for liability under section 1983.

27  Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir.1993).

28  ///

### H.  Fourteenth Amendment - Equal Protection

The Equal Protection Clause requires that all persons who are similarly situated should be treated alike. Lee v. City of Los Angeles, 250 F.3d 668, 686 (2001); City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). To state an Equal Protection claim, Plaintiff must show that the defendants acted with an intent or purpose to discriminate against him based on membership in a protected class, Lee, 250 F.3d at 686; Barren v. Harrington, 152 F.3d 1193, 1194 (1998), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (2005); Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000).

### I.  Eighth Amendment

#### 1.  Conditions of Confinement

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). A prisoner's claim does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'" Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir.2004) (quoting Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir.2002) (citation omitted)).  In order to find a prison official liable under the Eighth Amendment for denying humane conditions of confinement within a prison, the official must know "that inmates face a substantial risk of serious harm and disregard[ ] that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)

#### 2.  Deliberate Indifference to Serious Medical Needs

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show "deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir.2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976)). The two part test for deliberate indifference requires the plaintiff to show

(1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096; Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir.2012).

Deliberate indifference is shown where the official is aware of a serious medical need and fails to adequately respond. Simmons, 609 F.3d at 1018. "Deliberate indifference is a high legal standard." Id. at 1019; Toguchi, 391 F.3d at 1060. The prison official must be aware of facts from which he could make an inference that "a substantial risk of serious harm exists" and he must make the inference. Farmer, 511 U.S. at 837.

### 3.  Excessive Force

To the extent that Plaintiff attempts to assert an excessive force claim based on a threatened use of force, he may not do so.  Threats of bodily injury are insufficient to state a constitutional claim for violation of the Eighth Amendment.  See Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987) ("[I]t trivializes the eighth amendment to believe a threat constitutes a constitutional wrong.")

### J.  Fourth Amendment – Cell Searches

Prison walls do not form a barrier separating prison inmates from the protections of the Constitution.  Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259 (1987).  Nevertheless, prisoners' constitutional rights are subject to substantial limitations and restrictions in order to allow prison officials to achieve legitimate correctional goals and maintain institutional security. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, 107 S.Ct. 2400, 2404 (1987); Bell v. Wolfish, 441 U.S. 520, 546-47, 99 S.Ct 1861, 1878 (1979).  Prisoners have no expectation of privacy in their prison cells and the Fourth Amendment prohibition against unreasonable searches does not apply where prison officials conduct searches of an inmate's cell.  Hudson v. Palmer, 468 U.S. 517, 530 (1984).

### K.  Immunity from Suit

Plaintiff names the California Department of Corrections and Rehabilitation as a defendant in the caption.  Plaintiff may not sustain an action against a state department.  The

Eleventh Amendment prohibits federal courts from hearing suits brought against an unconsenting state.  Brooks v. Sulphur Springs Valley Elec. Co., 951 F.2d 1050, 1053 (9th Cir. 1991) (citation omitted); see also Seminole Tribe of Fla. v. Florida, 116 S.Ct. 1114, 1122 (1996); Puerto Rico Aqueduct Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993); Austin v. State Indus. Ins. Sys., 939 F.2d 676, 677 (9th Cir. 1991).  The Eleventh Amendment bars suits against state agencies as well as those where the state itself is named as a defendant.  See Natural Resources Defense Council v. California Dept of Tranp., 96 F.3d 420, 421 (9th Cir. 1996); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (concluding that Nevada Department of Prisons was a state agency entitled to Eleventh Amendment immunity); Mitchell v. Los Angeles Community College Dist., 861 F.2d 198, 201 (9th Cir. 1989).  The California Department of Corrections and Rehabilitation is a state agency which is entitled to Eleventh Amendment immunity from suit.

### IV.     Conclusion and Order

As stated above, Plaintiff's complaint fails to comply with Rules 8 and 18 of the Federal Rules of Civil Procedure and, as written, does not state cognizable claims that may proceed in a single action.  The Court will provide Plaintiff with the opportunity to file an amended complaint to cure the identified deficiencies. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000). Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 678-79, 129 S.Ct. at 1948-49.  Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. . . ." Twombly, 550 U.S. at 555 (citations omitted).

Plaintiff's amended complaint must comply with the requirements of Rule 18 of the Federal Rules of Civil Procedure regarding joinder of defendants.  Additionally, Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George, 507 F.3d at 607 (no "buckshot" complaints).

Finally, Plaintiff is advised that an amended complaint supersedes the original complaint. Lacey v. Maricopa Cnty., 693 F.3d 896, 927 (9th Cir. 2012) (en banc).  Therefore, Plaintiff's

amended complaint must be "complete in itself without reference to the prior or superseded pleading."  Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1.  The Clerk's Office shall send Plaintiff a complaint form;

2.  Plaintiff's complaint is dismissed for failure to comply with Federal Rules of Civil Procedure 8 and 18, and failure to state claims cognizable in a single action;

3.  Within **thirty (30) days** from the date of service of this order, Plaintiff shall file a first amended complaint; and

4.  If Plaintiff fails to file a first amended complaint in compliance with this order, this action will be dismissed for failure to obey a court order.

IT IS SO ORDERED.

Dated:   **January 28, 2014**              /s/ *Barbara A. McAuliffe*
                                      UNITED STATES MAGISTRATE JUDGE